NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KRISTEN A. LOMONACO, | Civil Action No. 14-07211 (SDW)(SCM) |
| Plaintiff, | **OPINION** |
| v. | October 2, 2015 |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**WIGENTON,** District Judge.

Before the Court is Plaintiff Kristen A. Lomonaco's ("Plaintiff" or "Lomonaco") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") that she is not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act (the "Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, this Court **AFFIRMS** the Commissioner's decision.

1

I.      **PROCEDURAL AND FACTUAL HISTORY**

   A. **Procedural History**

On December 29, 2010, Plaintiff applied for Disability Insurance Benefits ("DIB") (R. 140), alleging disability as of July 7, 2010, based on severe major depression. (R. 160.) Plaintiff's application was denied both initially and upon reconsideration. (R. 60–85.) Plaintiff's subsequent request for a hearing before an administrative law judge ("ALJ") was granted, and a hearing was held before ALJ Barbara Dunn ("ALJ Dunn") on November 19, 2012. (R. 12–14.) Plaintiff, as well as a vocational expert, appeared and testified at the hearing. (R. 12–24, 25–63.) On February 11, 2013, ALJ Dunn issued a decision finding Plaintiff was not disabled and denying her application for disability benefits. (R. 12-24.) On September 15, 2014, the Appeals Council denied Plaintiff's request for review of ALJ Dunn's February 11, 2013 decision, making it the Commissioner's final decision. (R. 1–5.) Plaintiff now seeks a reversal of the decision or, in the alternative, a remand and order for a new hearing. (Compl. 3.)

   B. **Factual History**

      **1. Personal and Employment History**

Plaintiff was thirty-two years old at the time the instant appeal was filed in 2014. (Compl. ¶ 4.) She holds a high school diploma and has previously worked as a medical biller, coder and a hospital registration admitting clerk. (*Id*.) Plaintiff alleges that she became disabled as of July 7, 2010, due to the following medical impairments: "[o]rthopedic, neurological and psychiatric condition[s]." (*Id*. ¶¶ 5–6.)

      **2. Medical History**

The record reflects that Plaintiff was examined by numerous medical doctors and healthcare practitioners in relation to her disability claim. (R. 25–63.)  In addition, Plaintiff

testified about her health during a hearing before ALJ Dunn. (*Id.*) The following is a brief summary of the medical evidence:

Plaintiff alleges that she has been unable to work due to physical and psychiatric ailments. (R. 160.) Specifically, Plaintiff contends that she has symptoms related to orthopedic, severe major depression and major depression disorder with psychotic features. (*Id.*)

Regarding her physical impairments, Plaintiff had a ruptured ovarian cyst on December 2, 2009 for which she received Percocet for pain, and from which she has since recovered. (R. 247.) She also claims to suffer chronic leg pain associated with a knee surgery in 2002. (R. 285.)

Plaintiff experienced mental ailments prior to the alleged onset date of disability of July 7, 2010. (R. 275–332.) During visits on February 2, 2010 and February 26, 2010, Plaintiff's family doctor, Michael Beams, D.O ("Dr. Beams") observed that Plaintiff suffered from a long history of "Major Depression" that worsened over the previous year, and that Plaintiff was depressed and could not concentrate or "deal with stress at all." (R. 276.) Dr. Beams concluded that Plaintiff's depression and inability to concentrate or deal with stress limited her ability to do work related activities. (R. 277.)

Plaintiff was admitted to Overlook Hospital on June 16, 2010 due to a drug overdose of Xanax and Ultram. (R. 282.) The attending physician classified the overdose as a suicide attempt, determining that it resulted from Plaintiff experiencing increasing depression, legal issues relating to a suspended drivers' license, and family problems. (*Id.*) Plaintiff admitted to the overdose the day after hospital admittance, and was ultimately admitted to the psychiatric ward on June 23, 2010 for observation. (R. 296.) Plaintiff was diagnosed with "major depression, severe, without psychosis." (R. 282.)

Plaintiff received a psychiatric evaluation on June 30, 2010 by Rozana R. Alam, M.D. ("Dr. Alam") at the Overlook Hospital Behavioral Health Program. (R. 362–64.) Dr. Alam's diagnostic impression was that Plaintiff had a "[m]ajor depressive disorder, severe without psychotic features and history of pain in right knee and hip status post right knee surgery arthroscopically." (R. 363.) Dr. Alam recommended weekly therapy, an increase in Zoloft medication, and weekly follow-ups. (R. 363–64.)

Beginning on July 7, 2010, the date of the alleged onset of disability, Plaintiff received weekly therapy. (R. 338–425.) Progress notes from July 7, 2010 show that Plaintiff struggled with daily activities over the previous two weeks. (R. 367.) On July 21, 2010, Plaintiff reported improved sleeping, and reduction of suicidal thoughts accompanied by anxiety. Plaintiff also stated that she intended to conduct an online job search. (R. 377.)

Plaintiff underwent outpatient therapy with Helen Kessler-David, LCSW ("Ms. Kessler-David") from September 2010 through December 2010. (R. 396–409.) An overview of Ms. Kessler-David's notes shows that Plaintiff's mood was euthymic, she was goal directed, her activity level was good, her sleep was mostly continuous and improved, while occasionally disruptive, and her pain ranged from moderate to intense. (*Id.*) Additionally, Ms. Kessler-David's reports show that Plaintiff began exercising, felt increased positivity, had a "good" relationship with her partner and mother, and was "feeling much more positive about life and moving forward." (R. 416.) Ms. Kessler-David stated in her psychiatric report for Plaintiff's disability claim that Plaintiff experienced depression affecting her attention, anxiety affecting her adaptation to new environments, and pain potentially limiting Plaintiff's ability to do work related activities. (R. 347.) Dr. Alam completed the same psychiatric report as Ms. Kessler-David on March 8, 2011, and reported the same findings. (R. 341.)

Plaintiff's psychiatrist's treatment notes from the same time period indicate that Plaintiff's condition was stable, she was not suicidal, and did not experience side effects from her medication. (*Id.*)

On April 19, 2011, Vasudev N. Makhija, M.D. ("Dr. Makhija") conducted an independent psychological evaluation of Plaintiff in accordance with Plaintiff's disability claim. (R. 329.) Dr. Makhija stated a diagnostic impression of a generalized anxiety disorder, major depressive disorder, single episode, severe, chronic, without psychotic features, a cognitive disorder potentially related to medication side effects, and a right knee injury. (R. 331.)

Thereafter, on May 24, 2011, Dr. Alam sent a letter to the disability determination committee stating that Plaintiff is "psychiatrically stable and is fully able to return to work." (R. 421.) The final mental status examinations by Ms. Kessler-David and Plaintiff's psychiatrist show that her mental status remained unchanged, that she was stable but anxious. (R. 422–25.)

### 3. Hearing Testimony

At the hearing held before ALJ Dunn on November 19, 2012, Plaintiff testified about her previous employment and training, mental conditions, therapy, and medical treatments, all of which have been previously stated. (R. 25–56.) Plaintiff also testified that because of her knee surgery she experiences difficulty lifting and standing – potentially affecting her ability to complete job requirements. (R. 52–53.) Plaintiff stated that she is unable to lift more than 50 pounds, and usually must sit after standing for an hour. (*Id.*)

Vocational Expert Rocco Meola ("Meola") also testified at the administrative hearing to determine whether there exists work in the national economy someone such as Plaintiff could perform. (R. 56–58.) Meola opined that that there existed several representative jobs, such as a microfilm mounter, an inspector/packer, and a produce weigher, in the national and local

economies that a person with limitations similar to Plaintiff's could perform. (R. 57.) Meola also testified that someone absent three times a month could not perform in the competitive labor market, (R. 58) and that only one absence per month would likely be acceptable in the positions Plaintiff could perform. (R. 58–59.)

## II.     LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted).

Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla'; it is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).

"The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "'where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits.'" *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

**B. The Five–Step Disability Test**

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A

claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . . " 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 480 (3d. Cir. 2007). If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; SSR 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to

8

do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).  If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).  If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e).  An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945.  The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p.  After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).  If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).  If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, the burden shifts to the ALJ at step five to determine whether the claimant is capable of performing an alternative SGA present in the national economy. 20 C.F.R. §§ 404.1520(g)(1) (citing 404.1560(c)), 416.920(g)(1) (citing 416.960(c)); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). At this point in the analysis, the SSA is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III. DISCUSSION

At step one of the disability analysis, ALJ Dunn properly found that Plaintiff had not engaged in SGA since July 7, 2010, the alleged onset date of Plaintiff's disability. (R. 17.)

At step two, ALJ Dunn properly found that Plaintiff suffered from the following severe impairments: "status post a right knee injury with residual pain; a generalized anxiety disorder; a major depressive disorder; and a cognitive disorder." (*Id*.) In making this finding, ALJ Dunn considered Plaintiff's testimony and the medical opinions and diagnoses of Plaintiff's treating physicians. (*Id*.) ALJ Dunn found that these severe impairments "significantly limit [Plaintiff's] mental and physical abilities to do one or more basic work activities. In addition, [Plaintiff's] impairments have lasted at a 'severe' level for a continuous period of more than 12 months." (*Id*.) ALJ Dunn's findings of severe impairment are supported by substantial evidence in the record.

At step three, ALJ Dunn properly determined that Plaintiff's impairments did not equal or exceed the impairments included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). First, ALJ Dunn properly found that the evidence in this case does not support a finding that the claimant has the degree of difficulty in ambulating as defined in 1.00B2b. (R. 17–18.) This listing "requires the involvement of one major peripheral weight-bearing joint resulting in inability to ambulate effectively." (R. 18.) Despite the chronic leg pain claimed by Plaintiff, the record presents medical evidence that Plaintiff's leg had good muscle bulk, good strength, and its sensory capabilities were intact. (R. 285.)

Second, ALJ Dunn properly found that Plaintiff's mental impairments did not meet or exceed the severity requirements set forth in listings 12.02, 12.04, and 12.06 of the Listing Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17–18.) ALJ Dunn properly found that the Paragraph B requirements were not satisfied. (*Id*.) First, ALJ Dunn found that Plaintiff had only moderate restrictions in her daily living activities. (R. 18.) ALJ Dunn cited to the testimony of both Plaintiff and medical professionals to conclude that Plaintiff had some difficulties engaging in daily activities, but that she is able to care for herself, make simple meals, and walk her dog. (*Id.*) Plaintiff also reported that she has a mix of good and bad days. (*Id*.) Second, ALJ Dunn found that Plaintiff only had moderate difficulties in social functioning. (*Id*.) ALJ Dunn cited the evidence in the record and Plaintiff's testimony that she goes out to eat, talks on the phone and computer, but doesn't socialize as much as in the past. (*Id.*) Third, ALJ Dunn found that Plaintiff had only moderate difficulties with regard to concentration, persistence or pace. (*Id*.) Again, ALJ Dunn cited much of the above-listed evidence as well as Plaintiff's testimony, and correctly determined that Plaintiff only has some difficulty in sustaining focus, attention and

concentration sufficiently long enough to permit the timely and appropriate completion of tasks commonly found in work settings. (*Id.*) Lastly, ALJ Dunn properly found that the record evidence only provides that Plaintiff experienced one to two episodes of decompensation, each of extended duration, insufficient to satisfy Paragraph B. (*Id.*) ALJ Dunn also found that the evidence failed to establish the presence of the Paragraph C criteria. (R. 19.)

For the above reasons, ALJ Dunn properly found that Plaintiff's impairments did not equal or exceed the impairments in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Before undergoing the analysis in step four, ALJ Dunn determined Plaintiff's RFC. (R. 19–23.) ALJ Dunn properly found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. 404.1567(b). After extensive review of the record, ALJ Dunn found, specifically, that:

> [Plaintiff] has the capacity to perform light work except that [Plaintiff] must have the ability to sit for two minutes after each one hour of standing. She cannot climb ladders, ropes or scaffolds and she can only frequently climb ramps and stairs. She can frequently balance, stoop, kneel, crouch, and/or crawl. She is also limited to one to two step instructions and only occasional contact with the public and co-workers.

(R. 19.) In making this determination, ALJ Dunn considered both objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 404.1527 and Social Security Rulings ("SSRs") 96-4p, 96-7p, 96-2p, 96-5p, 96-6p and 06-3p. (*Id.*) In support of her finding, ALJ Dunn cited extensively to the testimony of Plaintiff, to a third-party function report completed by Plaintiff's mother, and to the treatment and evaluative records of Dr. Makhija, Dr. Beams, and Dr. Alam, as well as the records from Overlook Hospital. (R. 19–23.) In light of the substantial evidence reviewed by ALJ Dunn, this Court finds that ALJ Dunn properly determined Plaintiff's RFC.

At step four, ALJ Dunn properly found that Plaintiff cannot perform her past relevant work under 20 C.F.R. 404.1565. (R. 23.) ALJ Dunn cited to the vocational expert's testimony that Plaintiff cannot perform the work of an eye technician, biller and coder, or hospital registration admitting clerk. (*Id*.) ALJ Dunn noted that Plaintiff's past relevant work was all semi-skilled and therefore exceeds her established mental and residual functional capacity. (*Id*.)

Lastly, at step five, ALJ Dunn properly found that Plaintiff can perform work that exists in significant numbers in the national and local economies. (R. 23.) ALJ Dunn considered Plaintiff's age, education, work experience and RFC, as well as the vocational expert's testimony. (R. 23–24.) The vocational expert determined that Plaintiff was capable of satisfying the requirements of the representative occupations of a microfilm mounter, inspector/packer, and a produce weigher, which exist in the aggregate of thousands of jobs locally. (*Id*.) Because Plaintiff is capable of performing work that exists in significant numbers in the national and local economies, Plaintiff is not disabled under sections 216(i) and 223(d) of the Social Security Act. (R. 24.)

**CONCLUSION**

Because this Court finds that ALJ Miller's decision is supported by substantial evidence in the record, the Commissioner's determination is **AFFIRMED**.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Magistrate Judge Steven C. Mannion
    Parties